J-S61007-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                    :          PENNSYLVANIA
                                    :
           v.                     :
                                    :
                                    :
DARREN DALE                    :
                                    :
          Appellant             :    No. 1063 EDA 2019

Appeal from the Judgment of Sentence Entered April 4, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0012513-2015

BEFORE: BOWES, J., OLSON, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BOWES, J.:                **FILED FEBRUARY 13, 2020**

Darren Dale appeals from his judgment of sentence of seven to fourteen years of imprisonment imposed after a jury convicted him of robbery, burglary, conspiracy, and related offenses. After thorough review, we affirm.

The facts giving rise to the Appellant's conviction are as follows. On October 8, 2015, upon returning to the Philadelphia home she shared with her daughter, Maribelen Carrasquillo (the "victim") noticed damage to her front door. N.T. Trial, 9/28/16, at 82. When she could not open it, she started kicking the door to force it open. *Id*. at 83. As the door gave way, she was accosted by two males, one of whom grabbed her by the hair, placed a gun to her head, and ordered her to lay face down on the floor. *Id*. She saw the

_____

[*] Former Justice specially assigned to the Superior Court.

face of the individual who assaulted her, and she was aware that he had a weapon. *Id*. at 83-84. Her assailant, later identified as Appellant, began interrogating her about "pins" and marijuana. *Id*. at 87-88. She said she did not know what "pins" were, and Appellant told her that they were guns. *Id*. at 88. When she replied she did not have guns or marijuana, the other man made a phone call and inquired whether he and Appellant were in the right house. *Id*. at 89.

Following the phone call, Appellant accompanied the victim to her basement at gunpoint. *Id*. at 90. The basement lights were illuminated and, once there, the victim turned around and looked at the Appellant. *Id*. at 92. As she stood face-to-face with Appellant, he placed the gun against her forehead. *Id*. The victim assured him that she would not call the police, but Appellant expressed concern that she had seen his face. *Id*. Appellant ordered the victim to turn around and get on her knees. *Id*. She testified at trial that she feared for her life. *Id*.

The next thing the victim heard was her cousin screaming outside, and when she turned around, Appellant was gone. *Id*. at 94. Her house was ransacked, her car was gone, and she called the police. *Id*. at 95-96. The victim provided police with a description of her assailants and her missing car, including the make and model. *Id*. at 96. Shortly thereafter, police took the victim to identify a potential suspect, but she told police that this individual was not her assailant. *Id*. at 97.

Later that evening, the victim went to the Philadelphia East Detective Division to give a formal statement. *Id*. at 98. She described Appellant as a dark-skinned male, about 5'9" tall, in his middle to late twenties, "dirty looking," with a scar on his face, and wearing a blue hoody, dark pants, and boots. *Id*. at 98-99. During a subsequent interview with a detective, she mentioned that Appellant's gun had a silver ring on the front of the barrel. *Id*. at 113.

Police recovered the victim's stolen vehicle within hours, impounded it, and processed it for fingerprints. N.T. Trial, 9/29/16, at 86-87. The police lifted eight latent fingerprints from the interior of the car. *Id*. at 88. Two prints were entered into a fingerprint identification system, and one print was a match to Appellant. *Id*. at 106-107.

Thereafter, the victim identified Appellant from a photographic array. N.T. Trial, 9/28/16, at 101-103. Upon seeing Appellant's photograph, the victim said that she was "a hundred percent positive that this was the man that was in my house, that held a gun to my head." *Id*. at 103.

Based on the fingerprint identification and the victim's positive identification of Appellant, police secured a search warrant for Appellant's residence. The search yielded three .45 caliber guns. N.T. Trial, 9/30/16, at 72-73. The victim later identified one of the guns seized as the gun with the silver ring on the barrel wielded by Appellant in the home invasion. *Id*. at 78.

Prior to trial, Appellant filed motions to suppress the identification and evidence obtained from the search of his house based on a lack of probable cause in the four corners of the warrant. Following a hearing on September 28, 2016, the court denied both motions. N.T. Motion, 9/28/16, at 57.

At the conclusion of the jury trial, Appellant was convicted of robbery, burglary, conspiracy, unlawful restraint, theft by unlawful taking, violations of the Uniform Firearms Act, and simple assault, and sentenced as aforesaid on April 4, 2017. Appellant filed a motion for reconsideration of sentence, which was denied on April 18, 2017.

On September 6, 2017, Appellant filed an untimely notice of appeal, which the Commonwealth moved to quash. This Court granted the motion, quashed the appeal, and denied Appellant's application for reconsideration of the quashal. On February 1, 2019, Appellant filed a *pro se* Post Conviction Relief Act Petition seeking reinstatement of his appellate rights *nunc pro tunc,* which was granted on March 26, 2019. Appellant filed a notice of appeal and complied with the court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.

Appellant raises three issues for our review:

1. Whether the lower court erred in denying Appellant's motion to suppress evidence recovered from his home where the warrant authorizing the search failed to establish there was probable cause to believe there was contraband on the premises?

2. Whether the lower court abused its discretion in granting the Commonwealth's motion *in limine* to preclude the

- 4 -

defense from eliciting evidence that the [C]omplainant's house was a drug house?

3. Whether the lower court abused its discretion when it denied Appellant's request to issue a *Kloiber* charge where the evidence established that the Complainant had only a very limited opportunity to observe her assailant?

Appellant's brief at 5.

Appellant's first issue is a challenge to the denial of his motion to suppress the items seized during the search of his home. Our scope and standard of review of a trial court's denial of suppression requires that we determine "whether the factual findings are supported by the record and whether the legal conclusions drawn from these facts are correct." *Commonwealth v. Tiffany*, 926 A.2d 502, 506 (Pa.Super. 2007). Additionally,

When reviewing the rulings of a suppression court, we must consider only the evidence of the prosecution and as much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

*Id*.

Essentially, Appellant argues that because this case is about a home invasion of the victim's home, it was unreasonable that his own home was the target of a search. Appellant contends that the lower court erred in finding that the affidavit established probable cause that contraband would be discovered in his residence, as there was no nexus between the criminal

activity alleged in the affidavit and the place to be searched. Appellant's brief at 11.

The following principles inform our review. The validity of a search warrant is based on the standard of probable cause. The Fourth Amendment of the United States Constitution requires a showing of probable cause before a warrant shall issue. *See* U.S. Const. Amend. IV. Similarly, the Pennsylvania Constitution provides that no search warrant shall issue unless there is a showing of probable cause supported by oath or affirmation. *See* Pa. Const., art. I, Section 8.

The United States Supreme Court held in *Illinois v. Gates*, 462 U.S. 213 (1983), that probable cause is evaluated according to the totality of circumstances test. Our Pennsylvania Supreme Court adopted that standard in *Commonwealth v. Gray*, 503 A.2d 921, 926 (Pa. 1985), finding that the probable cause test articulated by the *Gates* Court was a practical standard, and that the *Gates* "totality of the circumstances" test was consonant with Art. I, Sec. 8 of the Pennsylvania Constitution. *Id*. "Probable cause exists where the facts and circumstances within the affiant's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that a search should be conducted." *Commonwealth v. Jones*, 988 A.2d 649, 654 (Pa. 2010) (quoting *Commonwealth v. Thomas*, 292 A.2d 353, 357 (Pa.1972)).

When considering whether to issue a search warrant, the district magistrate must:

> make a practical, common-sense decision whether, given all of the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that the contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing] that probable cause existed.'

***Gray***, ***supra*** at 925 (quoting ***Gates***, ***supra*** at 238). This remains the applicable standard in the Commonwealth. ***See Commonwealth v. Batista***, 219 A.3d 1199, 1203 n.3 (Pa.Super. 2019) (applying totality of the circumstances test to determine if probable cause existed for issuance of warrant). "It is the duty of a court reviewing the issuing authority's probable cause determination to ensure that the magistrate had a substantial basis for concluding that probable cause existed." ***Commonwealth v. Jones***, 988 A.2d 649, 655 (Pa. 2010). The reviewing court must accord deference to the magistrate's probable cause determination and view the information offered in a "common sense, non-technical manner." ***Id***.

The suppression court examined the affidavit and the search warrant. The affidavit and application for the search warrant of Appellant's residence was completed by Detective Marc Johnson. The affiant provided a thorough description of the October 8, 2015 home invasion at the victim's residence. Two males looking for guns and marijuana had ransacked the home and stolen jewelry. They restrained the victim at gunpoint when she entered her home.

They left in her vehicle, a 2015 Nissan, which was recovered approximately five hours later. The vehicle was towed to the impound lot and processed for prints. Eight latent prints were lifted, one of which was a positive match for Appellant. The affiant described the photographic array and the victim's positive identification of Appellant as the person who had placed a gun to her head. Based on the foregoing, the affiant averred that there was probable cause to believe that "items taken in the robbery, jewelry, firearms, clothing, and any and all ballistic evidence and any items of evidentiary value" would be located in Appellant's residence. Application for Search Warrant and Affidavit, 10/27/15 at 2. The search warrant issued.

In evaluating whether there was probable cause for the issuance of the warrant for purposes of suppression, the trial court found that, based on the averments in the affidavit, there was a fair probability that evidence of the crime would be located at his address. Trial Court Opinion, 6/6/19, at 4. The affidavit related the facts of the home invasion and robbery, described what the victim had reported to police, and detailed what items were missing. It also described the investigatory steps that pointed police to Appellant as the perpetrator, *i.e.*, Appellant's fingerprint found in the victim's car and her identification of Appellant from the photographic array. In short, the affidavit specifically stated what was sought and why. The trial court denied Appellant's suppression motion.

Viewing the evidence adduced at the suppression hearing in the light most favorable to the Commonwealth, and there being no controverting evidence offered by the defense, we find ample record support for the trial court's factual findings. Furthermore, its conclusion that there was probable cause for the issuance of the search warrant was legally sound. The facts alleged in the warrant "were sufficient in themselves to warrant a man of reasonable caution in the belief that a search should be conducted pursuant to Pa. Const. art. I, sec. 8 and the Fourth Amendment." ***Commonwealth v. Jones***, ***supra*** at 645 (quoting ***Commonwealth v. Thomas***, 292 A.2d 352, 357 (Pa. 1972)). No relief is due.

Next, Appellant faults the trial court for granting the Commonwealth's motion *in limine* and precluding the defense from eliciting evidence that the victim's house was a "drug house." Appellant's brief at 22. When reviewing an evidentiary ruling, we apply an abuse of discretion standard of review. ***Commonwealth v. Kane***, 188 A.3d 1217, 1229 (Pa.Super. 2018). We defer to the "sound discretion" of the trial court. ***Id***. "Discretion" is defined as:

> import[ing] the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion, within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice, or arbitrary actions. Discretion is abused when the course pursued represents not merely an error of judgment, but where the judgement is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias, or ill will.

***Commonwealth v. Goldman***, 70 A.3d 874, 878-79 (Pa.Super. 2013). Additionally, "[t]o constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party." ***Commonwealth v. Lopez,*** 57 A.3d 74, 81 (Pa.Super. 2012).

Our rules of evidence provide that evidence is relevant if it has any tendency to make a fact of consequence in issue more or less probable than it would be without the evidence. ***See*** Pa.R.E. 401. Irrelevant evidence is not admissible. ***See*** Pa.R.E. 402. However, a court may exclude relevant evidence if its probative value is outweighed by a danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." ***See*** Pa.R.E. 403.

Appellant argues that evidence that the victim's home was a "drug house" and that her husband was incarcerated on drug charges was relevant and should have been admitted because it supplied a motivation for other individuals to rob the home. Appellant's brief at 24; N.T. Trial, 9/28/16, at 59. Furthermore, he contended that the proffered evidence was not unduly prejudicial because it did not implicate him or the victim in criminal wrongdoing. ***Id***.

The trial court determined that this evidence was of little probative value, and if admitted, could confuse the jury by diverting its attention to the criminality of the victim's husband rather than the conduct of the Appellant. Trial Court Opinion, 6/6/19, at 5. Furthermore, the court believed that

evidence that the victim's home was a "drug house" would unfairly connect her husband's criminal acts with those of Appellant, and there was no evidentiary link between the two. *Id*. The court aptly noted that there was no evidence that the home invasion was connected to the husband's drug's charges, citing the realization of Appellant and his cohort that they had broken into the wrong house.

We find no abuse of discretion on the part of the trial court in excluding the proffered evidence. Evidence of the conduct of the victim's husband was not probative, and if admitted likely would have confused the jury. Accordingly, Appellant is not entitled to relief on this ground.

The final issue raised by the Appellant is that the trial court erred in denying his request for a jury charge pursuant to ***Commonwealth v. Kloiber***, 106 A.2d 820 (Pa. 1954), generally referred to as a "***Kloiber*** instruction." We review a challenge to jury instructions under the abuse of discretion standard.

The law is well settled that jury instructions will only be given when they are warranted by the evidence in the case. ***Commonwealth v. Boyle***, 733 A.2d 633, 639 (Pa.Super. 1999). A trial court "should not instruct the jury on legal principles which have no application to the facts presented at trial." ***Commonwealth v. Buterbaugh***, 91 A.3d 1247, 1257 (Pa.Super. 2014) (citing ***Commonwealth v. McCloskey***, 656 A.2d 1369, 1374 (Pa.Super 1995)).

A **Kloiber** instruction is given when a defendant raises demonstrable concerns about the reliability of his identification by a witness. **Kloiber**, **supra** at 826-27. When "a witness did not have the opportunity to clearly view the defendant, equivocated in his identification of a defendant, or had difficulty making an identification in the past," the **Kloiber** instruction informs the jury that it should view an eyewitness identification with caution. **Commonwealth v. Rollins**, 738 A.2d 435, 448 (Pa. 1999). Conversely, where identification testimony "is positive, unshaken, and not weakened by a prior failure to identify[,]" it "need not be received with caution" and a **Kloiber** instruction is not warranted. **Commonwealth v. Upshur**, 764 A.2d 69, 77 (Pa.Super. 2000) (citing **Kloiber**, **supra** at 826).

Appellant contends that the evidence established that the victim "had only a very limited opportunity to observe her assailant." Appellant's brief at 26. Based solely on that fact, he argues that a **Kloiber** charge should have been given because her identification of him as her assailant may have been in error. **Id**. The trial court found, however, that the victim had several opportunities to observe her assailant and that she was consistent throughout in identifying Appellant. Trial Court Opinion, 6/6/19, at 6. The record supports the trial court's finding.

The victim testified that she first saw Appellant when she opened her door. N.T. Trial, 9/28/16, at 84. She saw his face again and for a longer time while standing face-to-face in her well-lit basement. **Id**. at 90-91. During the

interaction in the basement, Appellant expressed concern to her that she had seen his face. *Id*. at 92.

Following the home invasion, the victim gave a statement to police. She described Appellant's clothing, his approximate age and height, and stated that he had a scar on his face. *Id*. at 99. On the night of the home invasion, police presented her with a suspect whom they believed could have been her assailant, but she unequivocally rejected that notion. *Id*. at 12. She consistently maintained that Appellant had a scar on his face. *Id*. at 99-100. She later identified him in a photographic array, and at that time, she stated she was "a hundred percent positive" that the person depicted in the photo was her assailant. *Id*. at 103.

At the preliminary hearing, the victim identified Appellant as her assailant. N.T. Preliminary Hearing, 12/09/15, at 21-22. She identified him again at trial. N.T. Trial, 9/28/16, at 85. She testified on cross-examination that, during the home invasion, she focused on the scar on her assailant's face so that she could identify him accurately later. *Id*. at 149. Detectives testified at trial that Appellant does indeed have a scar on his cheek. N.T. Trial, 9/29/16, at 28.

Throughout the proceedings, the victim never once recanted or equivocated in her identification of Appellant. The court found, and the record supports its finding, that the victim had ample opportunity to see Appellant's face. Additionally, her identification was corroborated by fingerprint evidence

linking Appellant to her vehicle stolen during the home invasion. Accordingly, we find that the trial court did not abuse its discretion in refusing to give a ***Kloiber*** charge, and no relief is warranted.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/13/20